Bosworth, J.
(on consultation with Oaklet, O. .J., and Dueb, Campbell, and Emmet, Justices). Prior to the present constitution and the judiciary act of 1847, no one could appear on the record or act, as the attorney of a party, in conducting the proceedings in a suit, unless he had been regularly admitted by the court to practise as an attorney of the court (2 E. S. 287).
On being admitted and taking the oath of office, he became an officer of the court. He acquired as such, various privileges, and incurred various liabilities, some of which are regulated by statute, arid others by the settled practice of the courts.
The courts had the power to strike his name from the rolls and deprive him of his office for misconduct.
The courts also exercised the power of relieving a suitor summarily, against the misconduct of his attorney, instead of driving him to the expensive and dilatory remedy of an action. *639 The law was settled, that where an attorney had been retained and acted for a party, another attorney could not act for such party until he had been substituted by a rule of court, and notice of such substitution had' been served. If he undertook to act, without having been thus substituted, his proceedings would be disregarded (Jerome v. Boeran, 1 Wend. 293; Same v. The People, Graham Pr. 48-49).
The present constitution (art. 6, § 8) declares that “ any .male citizen of the age of twenty-one years, of good moral character, and who. possesses the requisite qualifications of learning and ability, shall be entitled to admission to practice in all the courts of this state.”
The revised statutes provided that “ no person shall be admitted a counsellor, attorney, or solicitor in any court, unless he be approved by such court for his good character and learning ” (2 R. S., 287, § 66).
The two provisions seem to be in the same spirit. The former was probably designed to deprive the courts of the power to prescribe any term of clerkship or study, as a condition to the right to an admission to practice. The requisite qualifications of learning and ability, and a good moral character, were made the only conditions. The constitution clearly implies that some tribunal must determine whether these exist in the applicant, and that the power of admission, and of refusing admission to practice, was to be vested at least in some one court. The 75th section of the Judiciary Act vested that power in the Supreme Court. That section provides that any person applying to be admitted, “ shall be examined by the justices of the supreme court,” that such “ examination shall be at a general term thereof,” and if the applicant “ shall be found to be of good moral character, and to possess the requisite qualifications of learning and ability, the court shall direct an order to be entered by the clerk thereof, stating that such person has been so examined and found to possess the qualifications required by the constitution, and thereupon such person shall be entitled to practise as an attorney, solicitor, and counsellor in all courts in this state, until he shall be suspended from such practice, as hereinafter provided. * * * The Supreme Court organized by tins act, shall possess the same power to remove or suspend *640 an attorney, solicitor, and counsellor, as is now possessed by the present supreme court and court of chancery ”' (Laws of 1847, p. 342, § 75).
These provisions, while they abolish a prescribed term of study, seem designed to secure as high qualifications as had previously been required as conditions to admission, and to provide for a more thorough and responsible examination of applicants by directing that the examination shall be made by the justices of the Supreme Court, at a general term. It does not seem to have been any part of the purpose of the framers of the constitution, or of the Legislature, to affect the rights, duties, or liabilities of an attorney, or of the power of the Court over them,—with this qualification, that to one court alone was confided the power of admitting, removing, or suspending an . attorney.
The Legislature of 1847, at its second meeting, amended the. judiciary act. Section 46 is in these words : “ Any person of good moral character, although not admitted as an attorney, may manage, prosecute, or defend a suit for any person, provided he is specially authorized for that purpose by the party for whom he appears, in writing, or by' personal nomination in open court.” (Laws of 1847, vol. ii., p. 647, § 46.)
The defendant claims that her managing attorney, appointed by the written power of attorney, filed on the 23d of September, is authorized by this section to act for her, and that the proceedings conducted by him are regular.
In Devries v. McKoan, (1 Code R., p. 6), it was decided at a special term of the Supreme Court for the first district, that this section was unconstitutional. The opinion pronounced states that it was unanimously concurred in by the other judges of the Supreme Court in that district. (3 Barb. S. C. R. 196.)
This motion can be disposed of without expressing any opinion on that question. Even if it be assumed that a person other than an “ admitted attorney ^ may manage, prosecute, or defend a suit, if specially authorized in writing or by personal nomination in open court, and if of good moral character, yet the existence of these conditions must be satisfactorily established before he has a right to act, and before his acts can be recognised as valid. As a matter of necessity, they must be *641 established to the satisfaction of the court in which the suit may be pending, or is to be brought.
If the managing attorney is to acquire his authority from a nomination of him by the party in open court, it will then be the duty of the court to determine whether he possesses the requisite of a good moral character. If his moral character is notoriously bad, or shall be satisfactorily shown to be so, it would be the duty of the court to refuse to pennit such person to appear in the suit. Unless this is so, and unless the court has this power, then an attorney removed for official misconduct might re-appear the next day under a special power of attorney, and act as attorney and counsellor in defiance of the court which had removed him.
There should be some order of the court, to evidence the fact of its having permitted the person having a power of attorney, or who has been nominated in open court, to appear for the party for whom he proposes to act.
If the only evidence of authority to act is a written power of attorney, the execution of it should be proved. If an attorney has been previously retained, and has been acting as such, the newly appointed attorney should present his power of attorney to the court, duly acknowledged or proved, together with a consent of the former attorney to the substitution; and, if a stranger to the court, should also produce evidence of his good moral character, and apply for an order permitting him to be substituted and to act in the place and stead of the former attorney. When such an order has been entered, and notice of it has been served, he may proceed in the action, and his proceedings will then be regular, unless § 46 of chap. 470 of laws of 1847 is unconstitutional.
That the judgment may show on its face that the proceedings have been conducted by a person having authority to act for the party in court, so as to bind him by his acts, the order of substitution should be incorporated in the judgment roll. (Code, § 281, sub. 2; 12 Mod. 440; 1 Chit. Archb. 42,)
In this case, it is sufficient to say, that, after the defendant had appeared and answered by an attorney of the court, all notices and proceedings on her behalf in the name of another person as her attorney, who had not begn authorized by an *642 order of the court made in the action to appear and act for her, were entirely irregular. The judgment and execution must be set aside as irregular, but in this case it will be without costs.